UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
ST. LOUIS DIVISION

CASE NO: 4:25-CV-97-CMS
(*consolidated with* 4:25-cv-514)

SHAWN SULLIVAN, individually,
and on behalf of all others similarly
situated,

    Plaintiff,

vs.

COLLECTIVE ACTION
PURSUANT TO  29 U.S.C.§ 216(b)

DENT WIZARD INTERNATIONAL, LLC,
a Foreign Limited Liability Company

    Defendant.

          /

## MEMORANDUM OF LAW IN SUPPORT OF
## UNOPPOSED MOTION FOR APPROVAL OF SETTLEMENT

Plaintiff, SHAWN SULLIVAN, on behalf of himself and the 723 similarly situated Automotive Repair Service Technicians that joined and remained in this lawsuit ("Collective Members")(*See* Ex. A, Settlement Agreement, ¶2(n)), (collectively "Mr. Sullivan" or "Plaintiff"), by and through the undersigned attorneys, hereby file this Memorandum of Law in Support of the Unopposed Motion for Approval of Settlement.[1] Mr. Sullivan and Defendant, Dent Wizard International, LLC, ("Dent Wizard"), are collectively referred to as the "Parties."

---

[1] Mr. Sullivan recognizes that the Eighth Circuit has not ruled whether judicial approval is actually required for private settlements of bona fide disputes over hours worked or wages owed. *See Barbee v. Big River Steel, LLC.*, 927 F.3d 1024, 1026 (8th Cir. 2019). "Nevertheless the clear trend among district courts is to review the settlement terms." *Shustarich v. Northern Belt & Conveyor, Inc.,* 2025 WL 1020468 *1 (D. Minn., March 14, 2025)(quotation and citation omitted). Furthermore, approval of the Settlement Agreement is a condition precedent to the Effective Date of the agreement. *See* Ex. A, Settlement Agreement, ¶2(g).

## LAW AND ANALYSIS FOR APPROVAL OF SETTLEMENT

### I.   Presumption in Favor of the Parties' Settlement

There is a strong presumption that the Parties' settlement is fair and that they can settle their own claims. *McGuire v. Eleras Group*, LLC., 2023 WL 8185068 *2 (E.D. Mo. Nov. 27, 2023)("strong presumption in favor of finding a settlement fair"); *King v. Raineri Const., LLC.*, 2015 WL 631253 *4 (E.D. Mo. Feb. 12, 2015)("presumption in favor of allowing the parties to settle their own disputes."). Furthermore, there is a strong public interest in encouraging settlements of complex litigation such as the present case. *Thurston v. East TN Dog Training, LLC.*, 2024 WL 4584919 *4 (E.D. Tenn. Sept. 13, 2024)("there is a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable and settlement conserves judicial resources.").

Thus, it is strongly presumed that the Parties' settlement is fair and can be approved, unless there is no evidence of a "bona fide dispute" or the proposed settlement is not fair and equitable to all parties. *See Del Toro v. Centene Management Co., LLC.*, 2021 WL 1784368 *2 (E.D. Mo. May 5, 2021)("the Court finds no basis to challenge the strong presumption in favor of finding settlement fair.")(citation and quotations omitted).[2] Because Mr. Sullivan provides the Court with relevant evidence supporting each part of this analysis, the Court can rely on the presumption and approve the settlement.

### II.   There is a Bona Fide Dispute and The Settlement is Fair and Equitable

---

[2] *See also Isbell v. Polaris, Inc.*, 2023 WL 6662980 *2 (D. Minn. Oct. 12, 2023)(Court "may approve the settlement agreement if (1) the litigation involves a bona fide dispute and (2) the proposed settlement is fair and equitable to all parties.").

**A.  The Settlement is the Product of a Bona Fide Dispute Between the Parties**

"The threshold for establishing whether a bona fide dispute exists between the parties is a low one met where the parties are in disagreement about the wages to be paid and liability of the issues." *Rodriguez v. GC Pizza, LLC*., 2024 WL 4458646 *3 (D. Neb. Oct. 10, 2024)(quotation and citations omitted). "A settlement is bona fide if it reflects a reasonable compromise over issues actually in dispute…." *King v. Ranier Constr., LLC.*, 2015 WL 631253 *2 (E.D. Mo. Feb. 12, 2015). This standard is easily met.

Mr. Sullivan alleged that he and similarly situated ARS Technicians worked overtime for which they were not properly paid. Doc. 1, ¶¶ 23-29, 61.  He alleged that Dent Wizard had a common policy of not paying all similarly situated ARS Technicians overtime pursuant to 29 U.S.C.§ 207(a)(2). *Id*., ¶¶ 36-38, 50-62. Mr. Sullivan alleged this matter was proper for collective action treatment. *Id*., ¶ 61, and at Request for Relief, ¶ a. He alleged that he and similarly situated employees were not only entitled to unpaid overtime damages but also liquidated damages. *See Id*. at Request for Relief, ¶ e. Lastly, Mr. Sullivan alleged that Dent Wizard's violations were willful thus entitling him and similarly situated employees to the benefit of the three (3) year statute of limitations. *Id*., ¶ 40.

 Dent Wizard disputed each allegation raised by Mr. Sullivan. Specifically, Dent Wizard contested whether Mr. Sullivan or similarly situated ARS Technicians actually worked uncompensated overtime. Doc. 62, ¶¶ 23-29, 61.  Dent Wizard contested it has or had a common policy of not paying all similarly situated ARS Technicians overtime pursuant to 29 U.S.C.§ 207(a)(2). *Id*., ¶¶ 50-62. It then argued that even if the ARS

Technicians were working overtime, they were exempt from being paid overtime wages pursuant to 29 U.S.C.§ 207(i). *Id*. at Aff. Def., ¶ 12. Dent Wizard contested that this matter was proper for collective action treatment. *Id*. at 16 (Response to Wherefore Clause). Dent Wizard contested that Mr. Sullivan and/or members of the collective were entitled to liquidated damages. *Id*. Lastly, Dent Wizard contested that its actions were willful. *Id*., ¶ 40. Therefore, there is a bona fide dispute.[3]

### B.  The Parties' Settlement is Fair and Equitable

Courts in this District have observed that factors which may be considered in confirming that an FLSA settlement is fair and equitable are: (1) the stage of the litigation; (2) amount of information exchanged; (3) experience of counsel; (4) probability of plaintiffs' success on the merits; (5) any overreaching by the employer; and (6) whether the settlement is a product of arm's length negotiations. *King*, 2015 WL 631253 *2; *McGuire*, 2023 WL 8185068 *2. A review of these factors confirms the settlement is fair and equitable.

### 1.  Stage of Litigation and Amount of Information Exchanged Demonstrates the Settlement is Fair and Equitable

The stage of litigation and amount of information exchanged demonstrates the settlement is fair and equitable. Pre-suit negotiations began in the first quarter of 2024, but no resolution was reached, and *Griffiths'* complaint was filed later that year. The Parties exchanged initial disclosures in *Griffiths* pursuant to Rule 26, as well as Court-ordered

---

[3] *See Guy v. DMG Installations*, 2021 WL 4973251 *4 (S.D. Iowa Oct. 22, 2021)(Court found bona fide dispute based on pleadings); *accord Thompson v. Spa City Steaks, Inc.*, 2019 WL 5653125 *2 (W.D. Ark. Act. 31, 2019)(Court found bona fide dispute based on review of pleadings).

discovery. Additionally, the Parties attended an FLSA Settlement Conference per the *Griffiths* court's order. The *Sullivan* Action was then filed in January 2025. Eventually *Griffiths* was transferred to this Court and the cases merged.

Although a resolution was not reached during early stages, the Parties began discussing a plan to exchange data both through traditional discovery and by reciprocal agreement. Doc. 116. The Parties exchanged a voluminous amount of data regarding Collective Members including dates of employment, weeks worked, weekly audits, time records, rates of pay, job description, and policies. *Id.*; *See also* Ex. B, LaBar Decl., ¶¶ 12-15. Following this Court's Order granting conditional certification, the Parties continued developing a plan to evaluate the various disputed issues. Ex. B, ¶ 12. On August 12, 2025, the Parties held a conference to discuss mediating the case. *Id.,* ¶ 13. On September 3, 2025, the Parties advised the Court they were engaged in settlement discussions and had developed a comprehensive data sharing plan. Doc. 116. The Parties reciprocally shared data in multiple rounds: an initial production (October 2025) and four supplemental productions (from November 2025 through February 2026). Ex. B, ¶ 15. These data files were used to build analytical workbooks and data sets for modeling workweeks, pay rates, hours worked, payroll calculations, overtime, and related wage-and-hour metrics. Across all categories of production data (sourced from both the ADP and Workday systems), over 40,000 workweeks (containing approximately 5.5 million rows of data) were analyzed. *Id.*, ¶ 14-15. The Parties engaged respective experts and data analytic specialists to synthesize and review the data produced. *Id.*, ¶ 15. Additionally, Collective counsel surveyed and interviewed Collective Members to gather data regarding the amount of overtime hours the

Collective Members claimed to have worked without proper pay, and anticipated testimony during litigation. *Id*., ¶ 17. The settlement reached, as further detailed below, represents a reasonable compromise based on all evidence evaluated. *See Peterson v. Jacob Rieger & Co., LLC*, 2025 WL 3522398 *2 (W.D. Mo. Mar. 10, 2025), *citing White v. Northstar Media, Inc.*, 2022 WL 3122925 *3 (D. Minn. July 25, 2022) (finding that settlements "occurring before the commencement of formal discovery may be fair where the parties have exchanged sufficient information to evaluate their claims").[4]

### 2. Collective Counsel's Experience and Opinion Supports Approval of the Settlement

Collective Counsels' experience and opinions demonstrate the settlement is fair and equitable. The four primary lawyers on the Collective Members' litigation team are experienced wage and hour counsel. These lawyers have been litigating wage and hour cases for over a combined 70 years, have hundreds of FLSA cases reported collectively and individually on Pacer, and have been lead counsel on numerous FLSA collective/class action cases. Ex. B, ¶ 7; *see also,* Murthy Decl., Ex. C, ¶ 11. As such, they have the legal knowledge and requisite skill and ability to fairly and adequately weigh the risks and potential outcomes for the Collective. *George v. Academy Mortgage Corp.*, 369 F.Supp.3d 1356, 1372 (N.D. Ga. 2019)("The Court should give great weight to the recommendations

---

[4] *See also Jones v. Synergies3 Tec Servs., LLC*,  2018 WL 6727061 *2 (E.D. Mo. Dec. 21, 2018)("[t]he parties exchanged a significant amount of data before settling the matter and participated in mediation."); *King*, 2015 WL 631253 *3("[t]he parties … exchanged a large amount of information and documents for a month before submitting the proposed settlement."); *McGuire*, 2023 WL 8185068 *2 ("The parties did not engage in formal discovery, but the Settlement Agreement represent that 'the parties have engaged in the voluntary exchange of a significant amount of information regarding the number of hours [Plaintiff] alleges he worked.").

of counsel for the parties, given their considerable experience in this type of litigation.");

*In re BankAmerica Corp Sec. Litigation*, 210 F.R.D. 694, 702 (E.D. Mo. 2002)("Although the Court is not bound by counsel's opinion, their opinion nevertheless is entitled to great weight.").

Collective Counsel recommends that the settlement is a fair and equitable compromise of several bona fide disputes. *See* Ex. B, ¶ 10, 19-22; *see also*,  Ex. C, ¶ 25. These disputes include: (1) Collective Members being exempt pursuant to 29 U.S.C. § 207(i); (2) whether Collective Members worked overtime (preliminary and postliminary activities), and if so, how much; (3) whether liquidated damages would be awarded (29 U.S.C. § 260); (4) whether Dent Wizard's actions were willful warranting the three (3) year statute of limitations (29 U.S.C. § 255); and (4) the likelihood of maintaining the collective action through decertification and trial. The conclusion by Collective Counsel that the settlement is fair and equitable is based on their intimate knowledge of the facts (*Id*.), as well as the law, in light of their experience handling FLSA cases and aggregate FLSA cases. *Id., ¶* 7; *see also,* Ex. C, ¶ 25.

### 3. <u>The Settlement is a Reasonable Compromise Based on the Probability of Success on the Merits, and it Reflects an Equitable outcome to the Collective Members</u>

From the range of possible outcomes, the settlement is fair and reasonable as it falls near the midway point between no recovery and maximum recovery. Ex. B*.,* ¶¶ 18-19. Analysis of the records and interviews with the Collective Members yielded total possible overtime wages of $4.4m (approx.) to the Collective for a 2-year statute of limitations period, up to $6.7m (approx.) if Mr. Sullivan obtained the maximum 3-year statute of

limitations. Additionally, Mr. Sullivan would have aggressively litigated Dent Wizard's good faith defense and asked the Court to hold that an equal sum of liquidated damages applies to the wage judgment, making the maximum possible exposure $13.4m (approx.). *Id.* For its part, Dent Wizard had numerous avenues to limit damages or even obtain a defense verdict (i.e., resulting in $0 recovery). *Id.* Thus, the $7,280,000.00 settlement amount represents around 54% of the Collective's maximum damage award possibility. *Id.* Again, the result is near the midpoint of best- and worst-case scenarios.

A "settlement is a product of compromise and the fact that settlement provides only a portion of the potential recovery does not make such settlement unfair, unreasonable or in adequate." *Keli v. Lopez*, 862 F.3d 685, 696 (8th Cir. 2017). As such, the *Keli* Court concluded that recovery of 27% of the classes' potential damages "well within the fair and reasonable range." *Id.*[5]   Thus, the settlement is fair and reasonable from a range of outcomes standpoint.

The settlement is also fair and equitable because the methodology for distribution of the fund to the Collective Members is based on the number of weeks where work was

---

[5]*See also Walkinshaw v. CommonSpirit Health*, 2023 WL 1995281 *2 (D. Neb. Feb. 14, 2023)(47% of the maximum wages owed reasonable); *Meller v. Bank of W*, 2018 WL 5305562 *6 (S.D. Iowa Sept. 10, 2018)(one third damages reasonable); *McClean v. Health Syst., Inc.*, 2015 WL 12426091 *4 (W.D. Mo. June 1, 2015)(holding recoveries of 25% and 30% percent on wage and hour claims reasonable); *Villegas v. J.P. Morgan Chase & Co.*, 2012 WL 5878390 *6 (N.D. Cal. Nov. 21, 2012)(settlement of approximately 15 percent found to be fair); *Bednarz v. Pat the Plumber, Inc.*, Case No.: 5:11-cv-506, 2012 WL 1094229 *2 (M.D. Fla. Mar. 16, 2012)(settlement of 15.1% of the claimed unpaid wages to be fair and reasonable); *Kyles v. Health First, Inc.*, Case No.: 6:09-cv-1248, 2010 WL 5140730 *3 (M.D. Fla. Dec. 3, 2010)(Court found settlement fair and reasonable where employee compromised her $179,358.38 claim for $3,935.00); *Lenahan v. Sears, Roebuck & Co.*, 2006 WL 2085282 *15-16 (D.N.J. July 24, 2006)(approving $15 million settlement in FLSA action where maximum potential exposure was $104 million, representing a 14% recovery).

performed by each Collective Member during the claim period. *Ex. B*, ¶¶24-25; *see also* Ex. B-1 (Sealed). The distribution allocates the Net Settlement Amount on a *pro rata*, per-workweek basis with a $200 minimum floor. *Id.* In this way, the Collective Members who worked more weeks in the claim period receive proportionally higher payout amounts than those who worked less weeks, but everyone who joined can receive some amount of consideration. *Id.* This methodology has been approved in the Eighth Circuit. *Johnson v. Himagine Solutions, Inc.*, 2021 WL 2634669 (E.D. Mo. June 25, 2021)(court approved a $965,000 FLSA collective settlement distributing funds based on each member's covered workweeks as a proportion of total covered workweeks, finding the plan "fair and reasonable"); *Guy v. DMG Installations, Inc.*, 2021 WL 4973251, at *5 (S.D. Iowa Oct. 22, 2021)(approving FLSA collective settlement distribution with "prorated shares allocated based upon the number of weeks the technician performed services for defendants"); *Peterson*, 2025 WL 3522398 (W.D. Mo. Mar. 10, 2025)(FLSA collective settlement approved with fund distribution based on weeks-worked during the claim period).[6] The settlement is therefore fair and equitable.

### 4. The Settlement Was the Product of Arm's Length Negotiations and There is No Employer Overreaching

---

[6] Courts beyond the Eighth Circuit likewise endorse this approach. *See, e.g., Ludlow v. Flowers Foods, Inc.*, 2024 WL 1162049, at *5 (S.D. Cal. Mar. 18, 2024) (approving $55 million FLSA settlement fund allocated by workweeks under contract and finding the method "fair and widely accepted"); *Duling v. Gristede's Operating Corp.*, 2013 WL 3146772, at *2-3 (S.D.N.Y. June 19, 2013) (approving allocation where each week worked counted as one point for pro rata distribution).

The settlement is the result of arm's length negotiations facilitated by experienced mediator Lynn P. Cohn ("Cohn"), who is also a published Clinical Professor of Law and Co-Director of the Center on Negotiation, Mediation, and Restorative Justice at Northwestern University School of Law. "Cohn mediated the parties' settlement, which supports the parties' assertion that the settlement was the product of arm's-length negotiations and did not involve overreaching by the employer." *See Netzel v. W. Shore Grp., Inc.*, 2017 WL 1906955 *6 (D. Minn. May 8, 2017)("Courts have held that negotiations involving counsel and a mediator, like the present case, raise a presumption of reasonableness.").

Furthermore, the settlement is the product of an adversarial process. As the pleadings and motion practice indicate, there are disputed issues of law and fact. These disputes were first mediated on January 27, 2026, with mediator Cohn. (*See* Doc. 138). The mediation was unsuccessful. Mediator Cohn conducted a second mediation on March 4, 2026. (*Id.*). Again, the Parties were unable to settle. Despite the failure to resolve the matter at the second mediation, mediator Cohn continued to facilitate settlement discussions, including through a mediator's proposal accepted by both sides, which ultimately led to the Parties' settlement. This procedure demonstrates the settlement is the product of an adversarial and "arm's-length" negotiation process. Thus, in light of the presumption of finding the settlement fair and the parties' entitlement to settle their own claims, along with the foregoing evidence, this Honorable Court can find the settlement is a fair and equitable resolution of a bona fide dispute over the FLSA.

III.   **Attorneys' Fees, Expenses, and Costs**

## A. **Attorneys' Fees**

The settlement provides that collective counsel will receive 35% of the common fund as attorney's fees. Ex. A, ¶ 24. In common fund cases such as this one, the calculation of attorney's fees is based on the percentage of the fund method. *See Cromeans v. Morgan, Keegan & Co., Inc.*, 2015 WL 5785576 *2 (W.D. Mo. Sept. 16, 2015)("The 'percentage-of the fund' method is the preferred method for calculating attorney's fees in common fund actions in this Circuit."); *Burnett v. National Assoc. of Realtors*, 2024 WL 2842222 *14 (W.D. Mo. May 9, 2024)("The percentage method aligns the interests of the attorneys and the class members by incentivizing counsel to maximize the class's recovery."). Moreover, in complex cases[7] and cases taken on a contingency fee basis such as this one,[8] the attorneys' fees range between 30% to 40% of the common fund. *Cimarron Pipeline Const., Inc. v. Nat'l Council on Compensation, Ins.*, 1993 WL 355466 *2 ("Fees in the range of 30–40% of any amount recovered are common in complex and other cases taken on a contingent fee basis.").[9] This demonstrates that the requested 35% fee is fair and reasonable.

---

[7] *See e.g., Barrentine v. Arkansas-Best Freight Sys., Inc.,* 450 U.S. 728, 743 (1981)("FLSA claims typically involve complex mixed questions of fact and law …. These statutory questions must be resolved in light of volumes of legislative history and over four decades of legal interpretation and administrative rulings.").

[8] *See* Doc. 24-7 at 5 (Collective Notice)("Plaintiff's attorneys have taken this case on a contingency basis.").

[9] *See also Huyer v. Buckley*, 849 F.3d 395, 399 (8th Cir. 2017)(Approving fee 38% of common fund); *In re U.S. Bancorp Litigation*, 291 F.3d 1035, 1038 (8th Cir. 2002)(Approving fee of 36% of common fund); *Del Toro v. Centene Management Co., LLC.*, 2021 WL 1784368 *3 (E.D. Mo. May 5, 2021)(Approving fee of 35% of common fund); *Galt v. Eagleville Hosp.*, 310 F.Supp.3d 483, 497 (E.D. Pa. 2018)(Approving fee of 35% of FLSA common fund); *Swanson v. Cathedral Energy Serv., Inc.*, 2019 WL 4858453 *3 (D. Colorado Oct. 2, 2019)(Approving fee of 35% of FLSA common fund).

The fact that Dent Wizard does not oppose the fee also deserves deference. *Melgar v. OK Foods*, 902 F.3d 775, 779 (8th Cir. 2018)(judicial review of agreed-upon attorneys' fees in a FLSA settlement requires deference to the parties' agreement); *Johnson,* 2021 WL 2634669 *6 (Court giving deference to agreed upon percentage in an FLSA common fund case); *Guy*, 2021 WL 4973251, *5-6 (approving FLSA collective settlement with agreed percentage of common fund being deducted for fees).

Notably, the Collective Members do not oppose the fee sought either. All 723 Collective Members were notified of the 35% fee by correspondence explaining the settlement, including each Collective Member's expected recovery, and were instructed to contact counsel with objections or questions. Ex. B, ¶ 26; *see also* Ex. B-2 (correspondence to Collective Members). There has not been a single objection to the requested fee (or any aspect of the settlement). *Id*. This further demonstrates the reasonableness of the fee requested, and the Collective Members' agreement with it also deserves deference. *Cimarron Pipeline Const., Inc.*, 1993 WL 355466 *2 (lack of objection indicates the appropriateness of the request.); *Etkins v. Equitable Life Ins. of Iowa,* 1998 WL 133741 *36 (M.D. Fla. Jan. 27, 1998)("The lack of objections is itself important evidence that the requested fee is fair."). [10]

---

[10] The basis of the common fund is an equitable one, and all who benefit from the fund should pay for that benefit. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)(Court can assess "attorney's fees against the entire fund, thus spreading fees proportionately among those benefited by the suit."). There is no paternalistic rule that requires the Court to override the agreement among the individuals. In fact, it is the freedom to choose without government intrusion that is at the foundation of the reasoning that is questioning whether it is even necessary to approve an FLSA settlement. *See e.g., Yu v. Hasaki Rest., Inc*., 944 F.3d 369, 414 (2d Cir. 2019)(Refusing to interject a "paternalistic judicial fairness hearing" into FLSA settlement by Rule 68).

The benefit to the collective and results obtained further demonstrate that the requested fee is appropriate.[11]  Moreover, the risk assumed by Collective Counsel further demonstrates that the requested fee is appropriate. Collective Counsel undertook a substantial risk on this matter as getting paid for the time invested was uncertain and contingent on outcome. *See* Doc. 24-7 ("Plaintiff's attorneys have taken this case on a contingency basis"); *see also* Ex. B, ¶ 29. This is because "FLSA claims typically involve complex mixed questions of fact and law." *Barrentine v. Arkansas-Best Freight Sys., Inc.,* 450 U.S. 728, 743 (1981). This case involves complex FLSA issues such as preliminary and postliminary activities. *Id*. at 743 (recognizing the distinction between principal rather than preliminary and postliminary activities is complex question of law and fact); Doc. 62 at Aff. Def. No. 8 (raising Portal-to-Portal Defense). Collective Members would recover nothing and thus counsel would receive no attorneys' fees or reimbursement for expenses and costs if the Court or a jury found the overtime the Collective Members sought to recover was spent on preliminary or postliminary activities.

The case also involves complex legal and factual issues of a 29 U.S.C. § 207(i) exemption. Doc. 62 at Aff. Def., ¶ 12; *see Cohan v. Columbia Sussex Management, LLC*., 2018 WL 4861391 *3 (E.D.N.Y. Sept. 28, 2019)(recognizing the complexity of 29 U.S.C. § 207(i); *Jackson v. R & A Towing*, LLC., 2023 WL 2433977 *3 (S.D. Tex. March 9, 2023)("Determining whether a business fits the retail concept [of § 207(i)] can be difficult

---

[11] The Eighth Circuit has not pronounced a specific rule to determine whether fees awarded pursuant to the benefit of the fund approach are reasonable. It has said the district court "*may* consider relevant [*Johnson*] factors." *Keil v. Lopez*, 862 F.3d 685, 701 (8th Cir. 2017)(emphasis added). Counsel has addressed the relevant *Johnson* factors in the body of this memorandum.

because a precise line cannot be drawn and exact objective standards cannot be established.")(quotations and citations omitted). If Defendant prevailed on this defense, Collective Members would recover nothing, and thus counsel would not have received fees or costs either.

This case deals with overtime allegedly worked for which there are no time records, further complicating the likelihood of recovery, and the amount of recovery even if entitlement were established. Such cases are complex and difficult to prove. *Jackson v. U.S. Bancorp,* Case No.:20-2310-EFM*, 2022 WL 744693 *4 (D. Kan. March 11, 2022)("Factually complicated off-the-clock claims under the FLSA are difficult to prove….")(cleaned-up); *Dennis v. Sandhills Emergency Physicians, P.A.*, Case No.: 1:20-cv-273, 2022 WL 448338 *3 (M.D.N.C. Sept. 27, 2022)(In approving settlement, Court acknowledged the factually difficult task of proving off-the-clock work where there are no records).

Notably, this matter is being prosecuted as a collective action consisting of 723 Collective Members. Collective actions are complex with uncertainties.[12] "Class and collective wage and hour cases require intensive resources, and -particularly when counsel operate, as here, on a contingency basis- pursuing these cases involve opportunity costs and risks." *Reynolds v. Fidelity Investments Inst. Operations Co.*, Inc., 2020 WL 92092 *3

---

[12] *See Segovia v. Fuelco Energy LLC.*, 2021 WL 2187956 *12 (W.D. Tex. May 28, 2021)("For complex cases, such as an FLSA collective action…."); *Carr v. Guardian Healthcare Holdings, Inc.*, 2022 WL 501206 *5 (S.D. Ohio Jan. 9, 2022)("[W]age and hour class/collective actions … are inherently complex…."); *Fengler v. Crouse Health System, Inc.*, 634 F.Supp.2d 257, 261 (N.D.N.Y. 2009)("Class actions, including a collective action brought pursuant to the FLSA, are complex litigations….").

(M.D.N.C. Jan. 8, 2020). The briefing on the motion for certification demonstrates the complex issues and uncertainties involved. *See* Docs. 23-24, 35-37, 42, 53. Thus, risk assumed by Collective Counsel further demonstrates that the requested fee is appropriate. Additionally,  Collective Counsel has considerable experience in FLSA collective actions further demonstrating the appropriateness of the fee request. Ex. B, ¶ 7; *see also,* Ex. C, ¶ 11.[13]

Finally, "[w]hen the Court uses the percentage-of-the-benefit method, it is not required to cross-check it against the lodestar method." *In re century Link Sales Practices and Securities Litigation*, 2020 WL 7133805 *13 (D. Minn. Dec. 4, 2020).[14]  Even if the Court were to perform a lodestar crosscheck, the requested fee remains reasonable because the resulting cross-check multiplier is approximately 3.6 using the Parties' agreed hourly fee rates. *See* Ex. A., ¶ 2(s); Ex. B, ¶ 46.[15] This further demonstrates that the requested fee is appropriate.[16] *Huyer v. Buckley*, 849 F.3d 395, 399 (8th Cir. 2017)(noting courts within Eighth Circuit have approved lodestars up to 5.6); *Rawa v. Monsanto*, 934 F.3d 862, 870

---

[13] This matter also encompasses additional complex legal and factual issues of whether liquidated damages pursuant to 29 U.S.C. § 260 and whether Dent Wizard's actions were willful pursuant to 29 U.S.C. § 255.

[14] The Court may accept counsels' statement of hours and hourly rates. *Decohen v. Abbasi, LLC.*, 299 F.R.D. 469, 482-83 (D. Md. 2014)("Thus, the Court may accept as reasonable class counsel's estimate of the hours they have spent working on the case."); *accord Ciarciello v. Bioventus Inc.*, 760 F.Supp.3d 377, 401 (M.D.N.C. 2024*); In re The Mills Corp. Securities Litigation*, 265 F.R.D. 246, 264 (E.D. Va. 2009); *Johnson v. Himagine Solutions, Inc.*, 2021 WL 2634669 *7 (E.D. Mo. June 25, 2021)("Although Plaintiffs' counsel has not submitted billing records," counsel provided evidence of hours worked and hourly rates)

[15] Defendant also has no objection.

[16] If the Court wanted to apply lower hourly rates of $500.00 per hour for partners and $350-400 for associates the cross-check multiplier would still be an acceptable 4.1.

(8th Cir. 2019)("while the 5.3 lodestar multiplier is high, it does not exceed the bounds of reasonableness.").[17]

## B. Expenses and Costs

"It is commonly recognized that the Court can reimburse counsel from the common fund for expenses advanced on behalf of the class*." Vogt v. State Farm Life Ins. Co.*, 2021 WL 247958 *3 (W.D. Mo. Jan. 25, 2021). "[L]aw firms are not eleemosynary institutions, and lawyers whose efforts succeed in creating a common fund for the benefit of a class are entitled not only to reasonable fees, but also to recover from the fund, as a general matter, expenses, reasonable in amount, that were necessary to bring the action to a climax. *In re Fid./Micron Sec. Litig.*, 167 F.3d 735, 737 (1st Cir. 1999). "Counsel in common fund cases may recover those expenses that would normally be charged by a fee-paying client." *Tussey v. ABB, Inc.,* 2019 WL 3859763 *5 (W.D. Mo. Aug. 16, 2019). Collective counsel requests $60,000 in costs and expenses.[18]  Ex. B, ¶ 48, *See also* B-3.

---

[17] *In re Charter Commc'ns, Inc., Securities Litig.*, 2005 WL 4045741 *22 (E.D. Mo. June 30, 2005)(fee award resulted in a multiplier of 5.6 on lodestar); *Rogowski v. State Far Life Ins. Co*., 2023 WL 5125113 *5, n.8 (W.D. Mo. April 18, 2023)(fee award resulted in a multiplier of 5.75 on lodestar); *In re Xcel Energy, Inc. Securities, Derivative and ERISA Litigation*, 364 F.Supp.2d 980, 999 (D. Minn. 2005)(fee award resulted in a multiplier of 4.7 on lodestar); *Thacker v. Chesapeake Appalachia, L.L.C.,* No. 07-cv-00026 (E.D. Ky. Mar. 3, 2010) (same with 8.47 multiplier); *Hainey v. Parrott*, 2007 WL 3308027 *1 (S.D. Ohio Nov. 6, 2007) (same with 7.47 multiplier); *In re Cendant Corp. PRIDES Litigation*, 243 F.3d 722, 732 (3rd Cir. 2001) (same with 7 multiplier); *In re Rite Aid Corp. Sec. Litig.,* 362 F. Supp.2d 587 (E.D. Pa. 2005) (same with 6.96 multiplier); *In re Cardinal Health Inc. Sec. Litig.,* 528 F. Supp. 2d 752, 768 (S.D. Ohio 2007) (same with 6 multiplier).

[18] It should be noted that the requested amount of $60,000 for costs and expenses is less than the actual costs and expenses reflected in the affidavit of costs exhibit, B-3. This is because the claims administration fees increased after the settlement agreement was reached. In light of this, undersigned counsel will be responsible for any administration costs or expenses in excess of $60,000, as agreed, so that the net settlement amount of the Collective Members is not disturbed.

### IV.  Service Payments

The settlement provides for service payments in the amount of $10,000.00 to Mr. Sullivan and $5,000.00 each to Messrs. Griffiths and Reyes. Ex. A, ¶5; The lack of objection by Dent Wizard or any Collective Member demonstrates their reasonableness. *See* Ex. B, ¶26. These service payments are consistent with Eighth Circuit precedent. *Caligiuri v. Symantec Corp.*, 855 F.3d 860, 867-68 (8th Cir. 2017)(approving $10,000 service awards to named plaintiffs and noting that "courts in this circuit regularly grant service awards of $10,000 or greater."); *Rawa v. Monsanto Co.*, 2018 WL 2389040 *9 (E.D. Mo. May 25, 2018)(Court approved the requested service awards of $10,000.00, $5,000.00 and $2,500.00).

Mr. Sullivan and Messrs. Griffiths and Reyes worked with Collective Counsel on initial case investigation, preparation of complaint, assisted in Rule 26 disclosures, responded to Court discovery, either attended or were available for numerous settlement conferences and mediations over the last several years, engaged in routine communication with counsel, and incurred reputational risk by attaching their names to a complaint suing employer, especially in a niche industry. Ex. B, ¶¶ 27-28. Mr. Sullivan, in particular, prepared for and attended each mediation session and gave thoughtful input into the resolution of this matter, stayed actively involved with the litigation throughout the process, and consistently prioritized the best interests of the collective. *Id*. The foregoing supports the award of service payments. *See Johnson*, 2021 WL 2634669 *5-6.

### V.  Other Considerations for the Court

#### A.  Final Certification of Collective Is Not Required

Interestingly, there are district courts in the Eighth Circuit that have concluded that "final certification" is *required* to approve a FLSA collective settlement. *See Adams v. City of Kansas City, Mo.*, 2022 WL 949815 *2 (W.D. Mo. March 29, 2022); *Lewis-Ramsey v. Evangelical Lutheran Good Samaritan Soc'y*, No. 3:16-CV-00026, 2017 WL 821656, at *2 (S.D. Iowa Jan. 10, 2017). Respectfully, this statement of law is wrong.

First, there is no binding precedent that *requires* this Court to make a final determination of "similarly situated" for "final certification" of the collective for the purposes of approving an FLSA collective settlement. In fact, the current status of the law from the Eighth Circuit suggests that the Court is not even *required* to approve private FLSA settlements. *See Barbee v. Big River Steel, LLC.*, 927 F.3d 1024, 1026 (8th Cir. 2019); *Vines v. Welspun Pipes, Inc.*, 9 F.4th 849, 854 (8th Cir. 2021). Thus, "final certification" is unnecessary.

Second, a collective action pursuant to 29 U.S.C. § 216(b) is aggregate litigation and not class litigation governed by Rule 23. It is aggregate litigation of individual FLSA claims by which an individual becomes a "party plaintiff" by consenting in writing and having such consent filed with the court. 29 U.S.C. § 216(b). Therefore, unlike a Rule 23 class settlement, there are no due process concerns. *See e.g., Gamble v. Boyd Gaming Corp.*, 2016 WL 3693743 *4 (D. Nev. July 11, 2016); *Mata v. STA Management, LLC.*, 2022 WL 8089058 *2 (E.D. Mich. Oct. 14, 2022). Thus, "final certification" is unnecessary.

Third, "final certification" is a determination that collective members are sufficiently "similarly situated" to proceed to trial as a representative action. *See Hipp v.*

*Liberty Nat'l Life Ins. Co.,* 252 F.3d 1208, 1218 (11th Cir. 2001)("If the claimants are similarly situated, the district court allows the representative action to proceed to trial.")(citations and quotations omitted); *Drake v. Steak N Shake Operations, Inc.*, 286 F.Supp.3d 1040, 1043 (E.D. Mo. 2017)("If the class members are similarly situated, the district court allows the representative action to proceed to trial.")(quotations and citations omitted).  This allows the collective to present their claims with inferential evidence, i.e., the jury is allowed to infer the experience of non-testifying employees from the experience of "similarly situated" testifying employees. *See e.g., Drake*, 286 F.Supp.3d at 1050-1051. The issue before the court is not whether this matter should proceed to trial as a representative action. Nor is it whether inferential evidence or representative testimony can be used. Rather, the issues before this Court are whether there is a bona fide dispute and whether the settlement of such dispute is fair and reasonable. Thus, "final certification" is unnecessary.

Fourth, if there is any judicial involvement in approving private FLSA settlements, it is limited to the following two questions: (1) whether there is a bona fide dispute and (2) whether the resolution of the dispute is fair and reasonable. *See Isbell v. Polaris, Inc.*, Case No. 22-CV-1322, 2023 WL 6662980 *2 (D. Minn. Oct. 12, 2023)(Court "may approve the settlement agreement if (1) the litigation involves a bona fide dispute and (2) the proposed settlement is fair and equitable to all parties."). These questions are the same in approving a collective FLSA settlement and an individual FLSA settlement. *Compare Isbell*, 2023 WL 6662980 *2 (collective FLSA settlement), with *Wilson v. Preferred Family Healthcare, Inc.*, 2023 WL 3338759 *2 (E.D. Mo. May 10, 2023)(individual FLSA

Page 19 of 26

settlement). There is no precedent that the Court should apply a different standard in approving FLSA settlements of collective claims brought pursuant to 29 U.S.C. § 216(b) verses individual claims brought pursuant to 29 U.S.C. §§ 206 or 207. *See Eastwood v. Sedgwick Claims Management Serv. Inc.*, 2021 WL 7450453 *3 (M.D. Fla. June 1, 2021)("And the undersigned has not located any binding authority that requires different treatment of FLSA collective actions verses FLSA individual actions with respect to approval of settlements."). Thus, "final certification" is unnecessary.

Finally, when one traces the cases cited in *Adams v. City of Kansas City, Mo*, 2022 WL 949815 *2 (W.D. Mo. March 29, 2022) that address this issue, they all appear to trace back to federal cases out of California or the Middle District of Florida.[19]  Yet, as other cases within the Ninth Circuit have observed, those California cases were "hybrid actions involving both FLSA collective claims certified under Rule 216(b), and state law class

---

[19]As one Court observed, "the cases reviewed by the Court offer no explanation why final certification should be required in the settlement context but simply cite earlier cases stating the same conclusion, which cases likewise omit analysis in favor of citation to still earlier cases, seemingly *ad infinitum*." *Mygrant v. Gulf Coast Rest. Grp., Inc.*, 2019 WL 4620367 *6 (*S.D. Ala. Sept. 23, 2019). As recognized, without much of any analysis, it appears that *Adams v. City of Kansas City, MO*, 2022 WL 949815 *2 (W.D. Mo. March 29, 2022) simply relied on *Lewis-Ramsey v. Evangelical Lutheran Good Samaritan Soc'y*, 2017 WL 821656, at *2 (S.D. Iowa Jan. 10, 2017) which relied on *Stewart v. USA Tank Sales & Erection Co.*, 2014 WL 836212 *2 (W.D. Mo. Mar. 4, 2014) which relied on *Gambrell v. Weber Carpet, Inc.*, 2012 WL 162403 * 2 (D. Kansas Jan. 19, 2012) which relied on *McCaffery v. Mortgage Sources, Corp.*, 2011 WL 32436 *3 (D. Kansas Jan. 19, 2012) which relied on *Murillo v. Pacific Gas & Elec., Co.*, 2010 WL 2889728 *2 (E.D. Ca. July 21, 2010) and *Burkholder v. City of Ft. Wayne*, 750 F.Supp.2d 990, (N.D. Ind.  2010). *Burkholder* relied on the Florida case of *Burton v. Util. Design, Inc.*, 2008 WL 2856983 *2 (M.D Fla. July 22, 2008) and the California cases of *Carter v. Anderson Merchandisers*, LP, 2010 WL 194784 *4 (C.D. Cal. May 11, 2010), *Misra v. Decision One Mortgage Co.*, 2009 WL 4581276 *4 (C.D. Cal. Apr. 13, 2009), and *Hopson v. Hanesbrands Inc.*, 2008 WL 3385452 *1-2 (N.D. Cal. Aug. 8, 2008).

claims certified on a Rule 23 basis. *See Gamble*, 2016 WL 3693743 *3 ("Although numerous district courts in the Ninth Circuit have required plaintiffs to make some showing for the final class certification before approving an FLSA settlement, those cases were "hybrid actions…."). Similarly, courts in the Middle District of Florida "have determined that final certification of the collective action is unnecessary for final approval of the settlement, absent a motion for decertification by the Defendant." *Theopin-Deleon v. Horne, LLP*, 2025 WL 448827 *5, n.7 (M.D. Fla. Feb. 5, 2025)(cases cited therein); *Metzler v. Medical Management Int'l, Inc.*, 2020 WL 5994537 *1-2 (M.D. Fla. Oct. 9, 2020)("the Court finds that final certification is not required before approving a settlement.").  Thus, "final certification" is unnecessary.

Based on the foregoing, the Collective Members do not believe that "final certification" is necessary to approve their settlement agreement. Yet, if the Court deems such a determination is necessary, it can do so. This is because the Court can enter an order of "final certification" based on the Parties' stipulation which is contained in ¶ 8 of the Settlement Agreement (Ex. A). *Gear v. Vista Clinical Diagnostic, LLC.*, 2017 WL 11632650 *2 (March 30, 2017)(Court concluded final certification based on parties stipulation (1) that the parties were similarly situated and (2) final certification); *Goldsby v. Renosol Seating, LLC.*, 2013 WL 653253 *4 (S.D. Ala. Dec. 13, 2013)(Court recited stipulation and cursory review of similarly situated for final certification); *Peterson*, 2024 WL 2148155 *2 (W.D. Mo. April 1, 2024)(Court appears to certify FLSA collective (conditionally) based on stipulation). The Court can also enter an order of "final certification" when: (1) a Defendant does not move for decertification or (2) otherwise

opposes collective treatment of a Plaintiff's FLSA claims for the purpose of settlement. *Medina v. Evolve Mortgage Serv., LLC.*, 723 F.Supp.3d 1162, 1170 (C.D. Cal. 2023).

Here the Parties have stipulated to final certification. Ex. A, ¶ 8 ("For settlement purposes only, the Parties stipulate to final certification of the collective action pursuant to 29 U.S.C. § 216(b)). The Parties also stipulate, for settlement purposes only, that the Collective Members are similarly situated in that they were subject to the same timekeeping system, were paid under the same compensation plan, and alleged that they were all victims of the same FLSA violating policy."). *Id.* Last, Dent Wizard has not moved for decertification and does not otherwise oppose the collective treatment of the FLSA claims. Thus, the Court can order "final certification" if it deems it necessary.

Finally, the Court can order "final certification" based on the facts presented to the Court. This is because collective members all worked as Automobile Repair Service Technicians (Doc. 54, at 16) and allegedly were not paid an overtime rate for weeks in which they worked more than forty hours. *Id*.; *see Rowe v. Iowa*, 2023 WL 7101875 *1 (S.D. Iowa Aug. 21, 2023)(Granting final certification in the context of settlement when employees worked in the same position and suffered same alleged violation). Therefore, the Court can enter an order of "final certification" for settlement purposes if it deems it necessary.

B. **An Objection Period or Fairness Hearing Is Not Required**

For the same reasons discussed above regarding the difference between and FLSA collective action and a Rule 23 class action, the settlement does not require an objection period or a fairness hearing. While, in class action cases pursuant to Rule 23 "the settlement

agreement must [] formally be presented to the class through the notice process, the class members given an opportunity to object or opt out, and a court must approve the settlement," 4 Newberg & Rubenstein on Class Actions 13:2 (6th ed. 2024)(update); *see also* Fed.R.Civ.P. 23(e), this a FLSA collective action, not a Rule 23 class action. *See Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 74 (2013)("Rule 23 actions are fundamentally different from collective actions under the FLSA….").

"Section 216(b) of the FLSA does not *require* a fairness hearing like that required for settlement of class actions brought under Fed.R.Civ.P. 23." *Tommey v. Computer Sciences Corp.,* 2015 WL 1623025 *1 (D. Kan. April 13, 2015)(emphasis added); *Mygrant v. Gulf Coast Rest. Group, Inc*., 2019 WL 4620367 (S.D. Ala. Sept. 23, 2019)("Such a [fairness] hearing, however, is not mandated by the FLSA."); *Heuberger v. Smith*, 2019 WL 3030312 *2 -3 (N. Ind. Jan. 4, 2019)("the Court can review and approve the settlement agreement without holding a final fairness hearing or adhering to the other requirement contained in Rule 23 of the Federal Rules of Civil Procedure.").

Therefore, as in this case, when the Court ordered notice to potential plaintiffs informed them that they would be bound by any settlement, (Doc. 54 (approving and amending Doc. 24-7)), and each of the Collective Members that opted in pursuant to the notice expressly consented to allow the named-Plaintiff (Mr. Sullivan) to settle the case on their behalf, (*see e.g*. Docs. 63-79, et al. ),[20] there is no need for a court ordered objection

---

[20] By opting into this matter, each Party-Plaintiff affirmatively stated Mr. Sullivan would be their agent, that he has authority to enter and sign a settlement agreement on their behalf, and that he has authority to waive any and all claims on their behalf. (Doc. 24-7)("[i]n agreeing to become a Collective Member of this Representative Action, I acknowledge that I have designated SHAWN

period or fairness hearing. *See Henderson v. Russ Darrow Group, Inc.*, 2021 WL 973981 *2, n.2 (E.D. Wisc. March 16, 2021); *Hood v. Uber Technologies, Inc.*, 2019 WL 93546 *3-4 (M.D.N.C. Jan. 3, 2019).[21]

Furthermore, where counsel has provided notice of the terms of the settlement to the Collective Members and they have had an opportunity to object, as here, there is no need for a court ordered objection period or fairness hearing. *See e.g., Dyer v. M&M Asphalt Maintenance, Inc.*, 2017 WL 2298192 *2 (M.D. Fla. May 26, 2017)(Court found no court supervised notice or objection period or fairness hearing was required where counsel provided notice of the settlement terms to the collective with an opportunity to object); *Boyd Gaming Corp.*, 2022 WL 4482477 *10-11 (D. Kan. Sept. 27, 2022)(Court found no court supervised notice or objection period or fairness hearing was required where the settlement administrator sent notice of the material terms of proposed FLSA settlement to 828 collective members and advised they had an opportunity to object within 21 days of receiving the notice).[22]

---

SULLIVAN as *my agent to make any and all decisions on my behalf concerning this litigation*, the method and manner of conducting the litigation *up to and including final judgment, … the entering of any settlement agreement to include the waiving any and all claims, executing a settlement on my behalf as my agent*, and all other matters pertaining to this lawsuit.")(emphasis added).

[21] *See also Marichal v. Attending Home Care Services*, LLC., 42 F.Supp.3d 271, 279 (E.D.N.Y. 2020)(Recognizing that a named Plaintiff has the authority to settle the claims of each opt-in plaintiff when they "affirmative[ly] assent" to such*.); but see Faulkner v. Ensign United States Drilling, Inc.*, 2019 WL 120810 *2, n. 2 (D. Colorado March 12, 2019)(citing cases that conducting a fairness hearing still needed even though consent forms designated named Plaintiffs as their agent.).

[22] *See also Ostrander v. Customer Engineering Serv., LLC.*, 2019 WL 764570 *3 (D. Colorado Feb. 21, 2019)(No court supervised notice or objection period or fairness hearing required where counsel sent notice of the proposed settlement and copy of settlement to entire collective and no objections received); *Servidori v Nomi Health, Inc.*,[22] 2024 WL 1720817 *7 (M.D. Fla. Apr. 8, 2024)(Cort found no court supervised notice or objection period or fairness hearing was required

Again, the settlement terms were mailed to the Collective Members and they were advised that their claims would be released upon depositing their settlement check. Ex. B-2. Release language will also be printed on the back of each Settlement Award check. Ex. A, ¶ 20 ("In cashing this check, I affirm and agree to the terms of the settlement and that I am releasing any and all federal, state, and local wage and hour claims that were or could have been raised in the complaint filed in this matter against Dent Wizard"). Thus, even after the Court determines that the settlement is fair and reasonable, Collective Members retain the right not to be bound by the settlement agreement. Under these circumstances, a court-ordered objection period or fairness hearing is unnecessary, and the Court may enter an order approving the settlement.

## VI.     **Conclusion**

In summary, Mr. Sullivan, respective counsel, and the more than 700 technicians who joined this case respectfully and collectively request that the Court approve the settlement.


Respectfully Submitted this 5th day of June, 2026


*** *Signatures Follow****

---

where counsel provided notice to the collective and opportunity to object); *Pieczynski v. LCA Vision, Inc.*, 2022 WL 2163800 *6 (M.D. Fla. May 19, 2022); *see also Tommey v. Computer Sciences Corp.,* 2015 WL 1623025 *1 (D. Kan. April 13, 2015)("when a [fairness] hearing is not requested, the plaintiff, at the very least, must notify the court that the opt-in plaintiffs had notice of the settlement an opportunity to object.").

| | |
|---|---|
| */s/ N. Ryan LaBar, Esq.* | */s/ Angeli Murthy, Esq.* |
| N. RYAN LABAR, ESQ. | ANGELI MURTHY, ESQ. |
| Florida Bar No.: 0010535 (FL) | Florida Bar No.: 88758 |
| Email: rlabar@labaradams.com | E.D. Mo. Bar No: 88758FL |
| SCOTT C. ADAMS, ESQ. | Email: amurthy@forthepeople.com |
| Florida Bar No.: 0573442 (FL) | COREY L. SELDIN, ESQ. |
| Email: sadams@labaradams.com | Florida Bar No.: 1026565 |
| LABAR & ADAMS, P.A. | E.D. Mo. Bar No.: 1026565FL |
| 2300 East Concord Street | Email: cseldin@forthepeople.com |
| Orlando, Florida 32803 | MORGAN & MORGAN, P.A. |
| (407) 835-8968 (telephone) | 8151 Peters Road, Ste. 4000 |
| (407) 835-8969 (facsimile) | Plantation, FL 33324 |
| *Attorneys for Plaintiffs* | *Attorneys for Plaintiffs* |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 5, 2026, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ N. Ryan LaBar*
N. RYAN LABAR, ESQ.