Docusign Envelope ID: 26744E853-25E4-0C2C-82C0-89E876BF961B



**EXHIBIT**

**A**

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI

**Shawn Sullivan,** Individually and on behalf of all others similarly situated

     *Plaintiffs*,

v.

**Dent Wizard International, LLC,**

     *Defendant*.

Case Number: 4:25-cv-00097-CMS

COLLECTIVE ACTION

---

## COLLECTIVE ACTION SETTLEMENT AGREEMENT AND RELEASE

1.     This Collective Action Settlement Agreement and Release (the "Settlement Agreement," "Settlement," or "Agreement") is entered into between Named Plaintiff Shawn Sullivan ("Named Plaintiff" or "Mr. Sullivan"), individually and on behalf of all Collective Members (as defined below, and together with Named Plaintiff, the "Plaintiffs"), and Defendant Dent Wizard International, LLC ("Defendant" or "Dent Wizard"), and to which the parties agree the Court may approve. Named Plaintiff and Dent Wizard are collectively referred to as the "Parties" to this Agreement.

### RECITALS AND BACKGROUND

A.     On September 30, 2024, Tyrone Griffiths, Richard Reyes, and William Gonzalez filed a Complaint against Defendant in the United States District Court for the Middle District of Florida alleging individual claims for unpaid overtime pursuant to 29 U.S.C. § 207 and a collective action pursuant to 29 U.S.C. § 216(b) ("*Griffiths* Action").

B.     The Parties in the *Griffiths* Action exchanged their Initial Discovery Disclosures pursuant to Fed.R.Civ.P. 26(a)(1)(A).

C.     Pursuant to the Court's Scheduling Order in the *Griffiths* Action, the Parties exchanged information and data to include time sheets and payroll records for Plaintiffs and computation of damages. The Parties attended the Court ordered FLSA Settlement Conference but did not reach a resolution.

D.     On January 24, 2025, Shawn Sullivan filed a Complaint against Defendant in the United States District Court for the Eastern District of Missouri alleging an individual claim for unpaid overtime pursuant to 29 U.S.C. § 207, a collective action pursuant to 29 U.S.C. § 216(b), and a common law count for breach of contract for unpaid wages ("Action")(Doc. 1).

1

E.      On April 15, 2025, the United States District Court for the Middle District of Florida transferred the *Griffiths* Action to the District Court for the Eastern District of Missouri upon the Parties' motion.

F.      On April 23, 2025, the District Court for the Eastern District of Missouri consolidated the *Griffiths* Action into this Action.  (Doc. 41).

G.      On March 19, 2025, Mr. Sullivan filed his Motion for Conditional Certification pursuant to 29 U.S.C. § 216(b), (Doc. 24), to which Dent Wizard filed an opposition, (Doc. 35), and Plaintiff filed a reply.  (Doc. 42).

H.      On May 22, 2025, the District Court for the Eastern District of Missouri granted Mr. Sullivan's Motion for Conditional Certification. (Doc. 54).

I.      723 individuals joined and remained in the Collective as a result of the Court granting Mr. Sullivan's Motion for Conditional Certification.

J.      On May 23, 2025, Dent Wizard filed its Answer and Affirmative Defenses to Mr. Sullivan's Complaint.  (Doc. 56).  On May 29, 2025, Mr. Sullivan sent a correspondence to Dent Wizard outlining his position regarding the legal and factual sufficiency of some of the affirmative defenses raised.   On June 13, 2025, Dent Wizard filed an Amended Answer and Affirmative Defenses to Mr. Sullivan's Complaint. (Doc. 62).

K.      Per the Parties' request (Doc. 78) and pursuant to Rule 16, the Court reset a Scheduling Conference for September 9, 2025, which had previously been set for July 7, 2025.

L.      On August 12, 2025, following written correspondences back and forth, the Parties conducted a case management conference with all counsel in attendance.  The Parties began formulating a comprehensive plan pertaining to data exchange prior to commencing formal discovery.  On September 3, 2025, the Parties advised the Court they were engaged in settlement discussions and had developed a comprehensive data sharing plan.  The Parties reciprocally shared data in multiple rounds: an initial production (October 2025) and four supplemental productions (from November 2025 through February 2026). These data files were then used to build analytical workbooks and data sets for modeling workweeks, pay rates, hours worked, payroll calculations, overtime, and related wage-and-hour metrics.

M.      On January 27, 2026, the Parties conducted a mediation before mediator Lynn P. Cohn. The mediation was unsuccessful. (Doc. 136).  One of the Parties' disputes was over certain weeks worked by California members of the Collective being eliminated from the Covered Workweeks because of a proposed class action settlement obtained in *Gonzalez, et. al. v. Dent Wizard International Corp.*, Case No.: 21-cv-001529 (Sup. Ct. California 2021)(Alameda County).  The Parties agreed to reconvene the mediation session on March 4, 2026. (Doc. 120).

N.      In light of this dispute, Mr. Sullivan filed his Motion to Set Aside, Vacate or Amend Order Granting Final Approval of Settlement in  *Gonzalez, et. al. v. Dent Wizard International Corp.*, Case No.: 21-cv-001529 (Sup. Ct. California 2021)(Alameda County).

O.      On March 4, 2026, the Parties again gathered before mediator Lynn P. Cohn.  Again, mediation was unsuccessful.

P.      Following the second unsuccessful mediation, the mediator made a mediator's proposal, which each side accepted.

Q.      Mr. Sullivan thereafter withdrew his Motion to Set Aside, Vacate or Amend Order Granting Final Approval of Settlement in *Gonzalez, et. al. v. Dent Wizard International Corp.*, Case No.: 21-cv-001529 (Sup. Ct. California 2021)(Alameda County).

R.      Separately, during the course of the Action, Mr. Sullivan was terminated from his employment with Dent Wizard, and raised claims through his counsel that this termination was retaliatory. Dent Wizard vehemently denied these allegations.

S.      Collective Counsel has made a thorough and independent investigation of the facts and law relating to the allegations in the Complaint over the course of over a year and a half of litigation. In agreeing to the terms and conditions of this Settlement Agreement, Named Plaintiff has considered: (a) the facts, evidence, and records obtained; (b) the applicable law; (c) the inherent and real risks of continued litigation and the uncertainty of the outcome of the claims alleged against Dent Wizard; and (d) the desirability of consummating this Settlement of this Action after over a year and a half of litigation, and the yet indeterminate number of months to years ahead had this Action continued.  Accordingly, Mr. Sullivan, upon advice and recommendations of his experienced Collective Counsel has concluded that the terms of this Settlement are fair, reasonable, and adequate, and that it is in his best interests and all Collective Members to settle their claims against Dent Wizard at this stage or juncture and pursuant to the terms set forth herein.

T.      Dent Wizard denies the allegations in this Action and further denies any and all liability for any alleged wage and hour violations or failure to pay overtime compensation or that any wages or compensation of any kind or nature is owed Mr. Sullivan or any Collective Member, including back pay.  Dent Wizard is entering this Agreement to eliminate the burden, risk, and expense of further litigation, including the inherent risk of judgment being entered against it.  This Settlement Agreement and all related documents are not and shall not be construed as an admission by Dent Wizard of any fault, liability, or wrongdoing, which Defendant expressly denies.

U.      This Agreement represents a compromise and settlement of highly disputed claims. Nothing in this Agreement is intended or will be construed as an admission by Dent Wizard that the claims in the Action or the Collective have merit or that Dent Wizard bears any liability to Mr. Sullivan or the Collective on those claims or any other claims, or as an admission by Plaintiffs that Defendant's defenses in the Action have merit.

V.      The Parties agree to final certification of the Collective for purposes of this Settlement only.

W.      Mr. Sullivan's individual claims for breach of contract and retaliation are being negotiated separately after the principal terms of this Settlement have already been agreed.

X.      The Parties recognize that Court approval of this Settlement may be required to effectuate the Settlement and do intend this Agreement to be presented to the Court for approval.

Y.      The Parties stipulate that this settlement is a fair and reasonable resolution of bona fide disputes to include whether the Collective Members (as defined below) were properly classified as exempt from the FLSA, whether Plaintiffs were owed unpaid overtime, whether any alleged violation of the law was in good faith, whether any alleged violation of the law was willful, and whether the Collective Members are similarly situated.

Z.      In consideration of the foregoing and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, it is hereby agreed as follows:

## DEFINITIONS

2.      The following terms used in this Settlement Agreement shall have the meanings ascribed to them below:

(a)      "Action" means the lawsuit captioned as *Shawn Sullivan, individually, and on behalf of all others similarly situated, v. Dent Wizard International, LLC,* pending in the United States District Court for the Eastern District of Missouri, Case No.: 4:25-cv-00097-CMS, and the merged lawsuit captioned as *Griffiths, et al. v. Dent Wizard International, LLC,* Case No.: 4:25-cv-514-AGF

(b)      "Administration Costs" means reasonable fees and costs incurred by the Claims Administrator in administering the Settlement, which shall include but not be limited to all fees and costs related to the mailings; reproducing the Notice; postage to send the Notice, handling all tax reporting; and other fees reasonably incurred by the Claims Administrator and approved by the Parties.

(c)      "Approval Order" means the Order approving the terms and conditions of this Agreement, as may be modified by the Court.

(d)      "Court" means the United States District Court for the Eastern District of Missouri.

(e)      "Defendant" means Dent Wizard International, LLC.

(f)      "Defendant's Counsel" means Littler Mendelson, P.C.

(g)      "Effective Date" means the latest of: (i) the date of final affirmance on any appeal of the Court's Approval Order; (ii) the date of final dismissal, with prejudice, of the last pending appeal from the Court's Approval Order; or (iii) if no appeal is filed, the expiration date of the time for the filing or noticing of any form of valid appeal from the Court's Approval Order..

(h)      "Service Award" means a payment approved by the Court made from the Qualified Settlement Fund to Shawn Sullivan, Tyrone Griffiths, and/or Richard Reyes in consideration of their expanded release of claims as described in Paragraph 5 herein, as well as

4

their service to the collective, including their active participation in the case from its inception and for Mr. Sullivan's attendance and participation at both mediations.

(i) "Gross Settlement Sum" is the sum of Seven Million Two Hundred Eighty Thousand Dollars ($7,280,000.00) and inclusive of payments for: (a) Settlement Awards to all Collective Members; (b) the Service Awards; (c) fund administration; and (d) all attorneys' fees, expenses and costs.

(j) "Minimum Payment Collective Members" means: Collective Members whose claims are valued at Two Hundred Dollars ($200.00) or less, pursuant to the terms of this Settlement will be allocated a Settlement Award of Two Hundred Dollars each.

(k) "Named Plaintiff" means Shawn Sullivan.

(l) "Net Settlement Amount" is the sum remaining for distribution as Settlement Awards following allocation of Service Awards, Attorneys' Fees, Expenses and Costs, and Claims Administrator costs, if determined separately from Attorneys' Costs.

(m) "Settlement Notification " means the form approved by the Court and sent to each Collective Member by the Settlement Administrator, apprising of the Court's approval of this Settlement, the effect of cashing their settlement check, and their gross, before tax, individual settlement amount. The Settlement Notification is attached as Exhibit A-2.

(n) "Collective Members" means any Named Plaintiff and any other Plaintiffs who filed a consent to join at any time prior to January 27, 2026 and have not withdrawn such consent to join. Any plaintiff that agreed to be dismissed prior to the motion for approval is not included as a Collective Member. The list of Collective Members is attached as Exhibit A-1.

(o) "Covered Workweeks" means all workweeks within the applicable three-year statute of limitations (three years from the date the Collective Member joined) less any time off, where work was performed by the Collective Members (approximately 41,000 workweeks).

(p) "Participating Collective Member"- a Collective Member that has cashed the check containing their Settlement Award.

(q) "Litigation Parties" means Shawn Sullivan, Collective Members, and Dent Wizard International, LLC collectively.

(r) "Plaintiffs' Counsel" or "Collective Counsel" means LaBar & Adams, P.A., and Morgan & Morgan, P.A., collectively.

(s) "Collective Counsel Rates" means: For Attorney N. Ryan LaBar, $550.00, for Attorney Angeli Murthy, $650.00, for attorney Scott C. Adams, $600.00, for Attorney Corey Seldin, $400.00; and for Paralegals, Michelle Bassett and Judy Cane, $135.00.

(t) "Qualified Settlement Fund" "Common Fund" or "QSF" means a qualified settlement fund under Section 468B of the Internal Revenue Code established by the Settlement Administrator and funded for the purpose of holding the Settlement Amount and distributing all

5

approved amounts to the proper individuals. The QSF will be controlled by the Settlement Administrator subject to the terms of this Agreement and the Court's Approval Order.

(u)     "Released Claims" means any and all federal, state, and local wage and hour claims that were or could have been raised in the complaint filed in this Action, as further defined in Section 4.

(v)     "Released Parties" means Dent Wizard and its past and present owners, members, managers, officers, partners, shareholders, directors, employees, representatives, principals, agents, trustees, administrators, executors, fiduciaries, attorneys, legal agents, insurers, reinsurers, underwriters, parent entities, subsidiary entities, affiliated entities, divisions, joint ventures, employee benefit plans, predecessors, merged entities, operators, operating companies, management companies, successors, heirs, assigns and any and all persons or entities acting by, through, under, or in concert with any of them.

(w)     "Releasing Parties" means (i) all Collective Members, and (ii) each Collective Member's estate, heirs, executors, administrators, assigns, or successors and any other person or entity acting on their behalf or asserting their rights.

(x)     "Dent Wizard" means Defendant Dent Wizard International, LLC.

(y)     "Settlement Administrator" or "Claims Administrator" means ILYM Group Inc., which will handle the administration of this Settlement pursuant to the terms of this Agreement.

(z)     "Settlement Award" means the individual settlement payment or amount that will be calculated as stated herein and paid to each Collective Member pursuant to the terms of this Agreement.

## THE SETTLEMENT FUNDS AND RELEASES BY NAMED PLAINTIFF AND COLLECTIVE MEMBERS

3.     **Settlement Sum.** In consideration for the Collective Members' release of any and all federal, state, and local wage and hour claims that were or could have been raised in the complaint in this Action, described in more detail in Section 4, and the other promises and covenants undertaken by Plaintiffs and the Collective Members below, Dent Wizard agrees to pay the Gross Settlement Sum of Seven Million Two Hundred Eighty Thousand Dollars ($7,280,000.00) to the Settlement Administrator for deposit into the Common Fund within forty-five (45) calendar days of Court approval. In addition to the Gross Settlement Sum, and within the same forty-five (45) day period, Dent Wizard agrees to pay the employer's share of payroll taxes on the wage portion of the Settlement Awards distributed to the Collective Members, as calculated by the Settlement Administrator.

4.     **Collective Members' Released Claims Under the FLSA and All Applicable State and Local Laws.** Upon acceptance of the Settlement Award, which is demonstrated by the Collective Member cashing or negotiating the settlement check referenced in Paragraph 17, the Releasing Parties shall and hereby do release and discharge all Released Parties, finally, forever and with prejudice, from any and all Released Claims. The Released Claims include any and all

6

claims, debts, penalties, liabilities, demands, obligations, guarantees, costs, expenses, attorneys' fees, costs and expenses, damages, actions or causes of action of whatever kind or nature, whether known or unknown, expressly limited to wage and hour claims under the federal Fair Labor Standards Act and any other state, local or federal law, including, but not limited to, claims for alleged unpaid regular, minimum or overtime wages, alleged off-the-clock work, payment for all hours worked, miscalculation of wages, alleged meal and rest break violations, unreimbursed business expenses, "One-In-Seven" laws, and any damages, liquidated damages, penalties, interest, fees or costs derivative from those wage and hour claims available under any federal, state, or local law, that were or could have been alleged in the Lawsuit or that reasonably arise out of the acts alleged in the Lawsuit. This release includes all claims for unpaid wages as alleged in the Complaint filed in the Action.  As of the Effective Date, each Collective Member shall have released all claims as defined in this Section, even if any Collective Member does not cash a Settlement Check, except for any Opt-In Plaintiff who notifies the Court, prior to entry of the Court's Approval Order, that they wish to withdraw from this Lawsuit and from this Settlement Agreement.

The Releasing Parties, to the fullest extent allowed by law, are prohibited from asserting any Released Claims against the Released Parties released by them in this Settlement, and from commencing, joining in or prosecuting a lawsuit or adversarial proceeding against the Released Parties based on a Released Claim.  Excluded from this prohibition are any instances where any individual is legally compelled to testify through service of a subpoena or other legal process.  A Settlement Notification will accompany the initial Settlement Award check each Collective Member receives.  Any Collective Member who does not deposit or cash his or her Settlement Award check shall not be bound by this release and shall retain all rights to pursue any claims he or she may have against the Released Parties.  Such Collective Members' claims will be dismissed without prejudice.

5. **Service Awards and  Broader Releases For Other Employment Related Claims and Service Awards**.  Defendant has agreed that Shawn Sullivan, as well as Richard Reyes and Tyrone Griffiths, will be provided with separate consideration for executing separate broader releases of claims which are attached hereto as Exhibit A-3, as well as in consideration of their service to the Collective Members through their respective contributions and participation in the Action.  These Service Awards shall be apportioned as follows:  a) Ten Thousand Dollars ($10,000.00) to Plaintiff Shawn Sullivan, b) Five Thousand Dollars ($5,000.00) to Plaintiff Richard Reyes, and c) Five Thousand Dollars ($5,000.00) to Plaintiff Tyrone Griffiths.

These Service Awards are in addition to Shawn Sullivan, Richard Reyes, and Tyrone Griffiths' individual Settlement Awards.  The Service Awards shall be treated the same as non-wage penalties and liquidated damages, to be reported on an IRS Form 1099.  The Service Awards shall be paid by the Settlement Administrator at the same time as the distribution to the rest of the Collective Members' Settlement Payments.  These payments and the broader releases are made part of this Agreement, but the same are null and void if the Court does not approve this Settlement Agreement and/or the Service Awards.   If for any reason the Court does not approve these payments and the broader releases these sums will be redistributed on a pro rata basis to the Collective Members.

7

## SETTLEMENT APPROVAL

6.      Within Collective Counsel's discretion, the Named Plaintiff shall file an Unopposed Motion to Approve Settlement with the Court within thirty (30) calendar days following the execution of this Settlement Agreement.  Collective Counsel shall provide Defendant's Counsel a copy of a draft Unopposed Motion for Approval of Settlement Agreement at least five (5) business days in advance of filing it with the Court and Defendant's counsel will provide any requested edits or modifications no later than three (3) business days thereafter.

7.      The Motion to Approve this Settlement will request that the Court approve the Settlement as a fair and reasonable resolution of a bona fide dispute and to dismiss Count I with prejudice.  Because Count II (an individual breach of contract claim) is being negotiated separately and without regard to the claims resolved by this Settlement Agreement, Count II will be dismissed without prejudice, subject to refiling in the appropriate forum if necessary.

8.      For settlement purposes only, the Parties stipulate to final certification of the collective action pursuant to 29 U.S.C. § 216(b). The Parties also stipulate, for settlement purposes only, that the Collective Members are similarly situated in that they were subject to the same timekeeping system, were paid under the same compensation plan, and alleged that they were all victims of the same FLSA violating policy.

## INDIVIDUAL SETTLEMENT PAYMENTS AND ALLOCATION

9.      The Parties agree to the creation of a Common Fund and that the Common Fund is intended to be a "Qualified Settlement Fund" under Section 468B of the Internal Revenue Code and Treas. Reg. § 1.468B-1, 26 C.F.R. § 1.468B-1, et seq., and will be administered by the Settlement Administrator as such.

10.      The Parties and the Settlement Administrator shall elect to treat the Gross Settlement Sum as coming into existence as a Qualified Settlement Fund on the earliest date set forth in 26 C.F.R. § 1.468B-1(j)(2)(i), and that such election statement shall be attached to the appropriate returns as required by 26 C.F.R. § 1.468B-1(j)(2)(ii).The Settlement Administrator shall be responsible for, in addition to any obligations stated herein or otherwise mutually agreed to by the Parties: establishing and maintaining a QSF; paying from the QSF the amount of attorneys' fees, costs and expenses awarded to Collective Counsel; distributing any Court-approved Service Payments to Sullivan, Reyes and Griffiths from the QSF; calculating the Settlement Payments allocated to each Collective Member based on the criteria set forth in this Agreement; sending all counsel such calculations, disbursing payment of appropriate taxes to be paid under the settlement from the QSF (including the employer taxes due from Defendant in addition to the Net Settlement Amount); complying with all applicable tax reporting obligations including issuing 1099s and W-2s to Collective Members; preparing and filing all applicable tax forms and amendments or modifications required thereto; distribution of the Notice and Settlement Checks to the Collective Members; compiling copies of tendered Settlement Checks and providing those copies to Defendant; reissuing the second distribution of settlement funds to Participating Collective Members, if necessary; distributing any required funds to the agreed upon *cy pres* recipient, if necessary; preparing a declaration regarding its due diligence in the claims

8

administration process, and insuring against any errors, omissions, or mistakes which may occur during administration.

11.     All disputes relating to the Settlement Administrator's performance of its duties, after good faith efforts by the Parties to first resolve such disputes, will be referred to the Court, if necessary, which will have continuing jurisdiction over this Agreement until all payments and obligations contemplated by this Agreement have been fully carried out and thereafter to enforce the releases contained herein.

12.     The Claims Administrator shall make the calculations set forth in Paragraph 10, above, within twenty-one (21) days of the Court's Approval of the Settlement and shall alert Dent Wizard to this total by the same date, so that Dent Wizard can timely deliver the employer's share of the payroll taxes associated with the Settlement Payments no later than forty-five (45) calendar days following Approval. The employer's share of all payroll taxes (including, without limitation, FICA, Medicare, FUTA, and any applicable state or local employer taxes) shall be paid by Dent Wizard separately and in addition to the Gross Settlement Sum, and shall not reduce or be deducted from the Gross Settlement Sum, the Net Settlement Amount, or any individual Collective Member's Settlement Award.

13.     The Parties agree to cooperate with the Settlement Administrator and one another to the extent reasonably necessary to carry out the provisions of this Section.  The Parties will require the Settlement Administrator to indemnify and hold harmless the Parties for and against any claims or liabilities resulting from errors or omissions in its administration of the settlement funds.

14.     Within fourteen (14) calendar days of Court approval of this Settlement agreement, Defendants' Counsel shall deliver to the Claims Administrator, an Excel file containing the following information as to the Collective Members (see Exhibit 1): i) the full legal names of the Collective Member; ii) the Collective Members' Social Security Numbers; iii) employee ID #'s; and iv) any other information the Claims Administrator requires to commence with the delivery of the Settlement Awards according to the payment schedule agreed to in this Agreement..

15.     No later than seven (7) calendar days after an Approval Order from the Court, Plaintiffs' Counsel shall provide the Claims Administrator with the Excel file containing the individual Settlement Award allocations for each Collective Member.

16.     The Settlement Administrator shall be responsible for disbursing all Settlement Awards and the Service Awards, along with all required tax reporting.

17.     Fifty percent (50%) of the Settlement Awards to each Collective Member shall be considered regular wages subject to the withholding of all applicable local, state, and federal taxes and withholdings.  Fifty percent (50%) of the Settlement Awards to each Collective Member shall be considered liquidated damages and not subject to employer payroll taxes or withholdings.  The Settlement Administrator shall issue an IRS Form 1099-MISC, to the extent required, to each Collective Member for these payments. The Settlement Award shall be delivered in one check to each Collective Member.

9

18.     Tax Withholding Elections. The Claims Administrator shall calculate the withholding on the wage portion for that Collective Member at the default rate prescribed by the IRS for a single filer claiming the standard deduction with no other adjustments (and the analogous default rate under applicable state law). Neither the Claims Administrator, Collective Counsel, Defendant, nor Defendant's Counsel shall be liable to any Collective Member for any tax consequences resulting from the application of withholding rates based on the forms on file, newly submitted forms, or the default withholding rate.

19.     All Settlement Award checks confirmed delivered and not returned as undeliverable to the Collective Members shall be negotiable for one hundred twenty (120) days from the date they are issued, and shall indicate same on the face of the check. Any amounts from uncashed settlement checks after the one hundred twenty (120)-day period to negotiate the check will remain in the QSF subject to further disposition as provided for in Paragraph 21(b) below. The Claims Administrator will seek to confirm all Collective Members' U.S. mailing addresses before disbursement, and if any payments are returned for bad address or expired forwarding address, to use all available means to skip trace or run searches for revised information or to contact Plaintiffs over the undeliverable settlement shares.

20.     The following release language will be printed on the back of each Settlement Award check: ***In cashing this check, I affirm and agree the terms of the settlement and that I am releasing any and all federal, state, and local wage and hour claims that were or could have been raised in the complaint filed in this matter against Dent Wizard.***

## SETTLEMENT AWARD CALCULATION AND ALLOCATIONS

21.     **Individual Settlement Awards to Collective Members**:

(a)     **The Net Settlement Amount shall be allocated as follows**:

Each Collective Member will receive an individual Settlement Award based on a pro rata share of the Net Settlement Amount ($4,652,000.00). Specifically, each Collective Member will receive a payment equal to the Net Settlement Amount times the ratio of (i) the number of workweeks during which a Collective Member performed work during the Covered Workweeks to (ii) the total number of Covered Workweeks worked by all Collective Members. For example, a Collective Member credited with 41 workweeks represents approximately 0.10% of the Covered Workweeks (41wks/41,000wks) and would receive approximately $4,652.00 from the Net Settlement Amount.

Notwithstanding the foregoing, any Collective Member whose pro rata share, as calculated above, would be less than Two Hundred Dollars ($200.00) will instead receive a minimum Settlement Award of Two Hundred Dollars ($200.00).

Plaintiffs' Counsel will provide the Claims Administrator with the Settlement Award allocations for all of the Collective Members in an Excel file within 7 days, or sooner, of Court Approval.

(b)     **Remaining Amounts from Net Settlement Amount and Supplemental Distribution to Plaintiffs**: After all payments have been distributed according to the payment schedule in this Agreement, and the final 120-day expiration period for cashing checks for Settlement Awards has occurred, the Claims Administrator shall total the amount of any uncashed

10

checks. If after the initial distribution of the Settlement Shares, the uncashed Settlement Share checks equal or exceed $25,000.00, the Settlement Administrator shall make a second distribution of the uncashed funds on a pro rata basis to the Collective members that cashed their checks ("Participating Collective Members"), in proportion to their original allocation in the initial Settlement Award. These additional payments shall be issued as 1099 payments to each such respective Collective Member. If a check sent in the second distribution is undeliverable, or if the value of the initial undistributed funds is less than the initial $25,000.00 threshold, then the undistributed amount will be distributed to the *cy pres* agreed upon by the Parties and approved by the Court. The Claims Administrator will make the final distribution payments associated with this paragraph within thirty (30) days of the conclusion of the expiration period for the last Settlement Award payment. Collective Members shall have 120 days to cash any final distribution payment they receive pursuant to this paragraph. The amount of any uncashed final distribution payment shall be allocated to the agreed/approved *cy pres,* or, if same is not possible, to the unclaimed property fund in the states corresponding to the individuals who did not cash the checks.

(c)   **No Claims Based Upon Distributions or Payments in Accordance with this Settlement Agreement**: Plaintiffs agree that no Plaintiff in this action shall have any claim against the Released Parties, Collective Counsel, or Defendant's Counsel based on the calculated individual Settlement Awards made in accordance with this Settlement Agreement.

22.   Defendant shall deposit the Gross Settlement Sum into the Common Fund no later than forty-five (45) calendar days after the Court Approves the Settlement Agreement in the Action.

(a)   No later than ten (10) calendar days after the Effective Date, the Claims Administrator will: (1) mail each Collective Member his/her Settlement Award; (2) mail Named Plaintiff and Plaintiffs Reyes and Griffiths their Service Awards; and (3) wire attorneys' fees and costs to Collective Counsel, providing 50% of the fee amount to each Collective Counsel firm, and costs to Morgan & Morgan, P.A. and to LaBar & Adams, P.A. in an apportioned amount, the aggregate of which shall not exceed $60,000, to be determined by the Collective Counsel after the Effective Date.

23.   Defendant will not take any adverse employment or retaliatory action against any Collective Member on the grounds that he/she cashes or does not cash their Settlement Award check or based on his or her participation in the Action.

24.   **Attorneys' Fees and Costs**. Plaintiffs' Counsel will file as part of the motion for approval of this Settlement, and which Dent Wizard does not oppose, a request for the Court to approve 35% of the Gross Settlement Sum ($2,548,000.00) as Attorneys' Fees, and $60,000.00 in expenses and costs. Any amount of the requested attorneys' fees not approved by the Court will remain in the QSF to go towards allocations of Settlement Awards to Collective Members. Defendant will not oppose Collective Counsel's Rates.

# MISCELLANEOUS

25.     **No Admission of Liability.** This Settlement Agreement and all related documents are not and shall not be construed as an admission by Defendant or any of the Released Parties of any fault or liability or wrongdoing.

26.     **No Resolution of Named Plaintiff Breach of Contract or Retaliation Claims.** The Parties acknowledge that Mr. Sullivan's individual claims for breach of contract and retaliation are not yet resolved, and will be resolved separately and without consideration to his FLSA overtime claim or the claims of the collective.  The settlement of Mr. Sullivan's individual claims are supported by separate consideration and is not contingent on the approval of this Agreement.

27.     **FLSA Release of Collective Members in Argueta. .** In the event final approval of the settlement is denied, Defendant agrees that it will not seek to enforce any alleged FLSA release of the Collective Members covered in *Gonzalez, et. al. v. Dent Wizard International Corp.*, Case No.: 21-cv-001529 (Sup. Ct. California 2021)(Alameda County) and/or *Jorge Argueta, et. al. v. Dent Wizard Corporation*, Case No.: 21cv001529 (Sup. Ct. Cal. 2021)(Alameda County).

28.     **Withdrawal of Consents to Join.** During the pendency of this litigation, various Party Plaintiffs joined these actions but then requested to be withdrawn or removed.  All such individuals shall not receive a Settlement Award nor release any rights related to this matter.

29.     **No Tax Advice.** Collective Counsel and Defendant's Counsel do not intend this Agreement to constitute legal advice relating to the tax liability of any Collective Member, and the Settlement Agreement does not constitute such advice.  To the extent that this Agreement, or any of its attachments, is interpreted to contain or constitute advice regarding any federal, state, or local tax issue, such advice is not intended or written to be used, and cannot be used, by any person for the purpose of avoiding any tax liability or penalties.

30.     **No Confidentiality of This Agreement**.  This Settlement and the Settlement Agreement is not confidential, and the Parties understand that the Settlement Agreement is being presented to the Court for approval and will thus be public record.  No representations by Plaintiffs or their attorneys as to confidentiality of this Agreement were made at the time of the Settlement.

31.     **Defendant/Dent Wizard Legal Fees.** Dent Wizard's legal fees and expenses in this Action shall be borne solely by Dent Wizard.

32.     **Effect of Non-Approval.**  If the Court does not approve the Settlement as provided herein, or the Effective Date does not occur, the Named Plaintiff and Defendant agree to work in good faith to secure approval, and engage in follow-up negotiations with the intent of resolving the Court's concerns that precluded approval, and, if feasible, to resubmit the Settlement for approval within thirty (30) days.  If the Settlement is not approved as resubmitted or if the Named Plaintiff and Defendant are not able to reach another agreement, then either the Named Plaintiff or Defendant may void this Agreement; at that point, the Named Plaintiff and Defendant agree each shall return to their respective positions as existed on the day before this Agreement was executed, and this Agreement shall not be used in evidence or argument in any other aspect in the Action.

12

33.     **Inadmissibility of Settlement Agreement.** Except for purposes of settling this Action, or enforcing its terms (including that claims were settled and released), resolving an alleged breach, or for resolution of other tax or legal issues arising from a payment under this Settlement Agreement, neither this Agreement, nor its terms, nor any document, statement, proceeding, or conduct related to this Agreement, nor any reports or accounts thereof, shall be construed as, offered or admitted in evidence as, received as, or deemed to be evidence for any purpose adverse to the Parties, including, without limitation, evidence of a presumption, concession, indication, or admission by any of the Parties of any liability, fault, wrongdoing, omission, concession, or damage.

34.     **Computation of Time.** For purposes of this Agreement, if the prescribed time in which to complete any required or permitted action expires on a Saturday, Sunday, or legal holiday (as defined by FED. R. CIV. P. 6(a)(6)), such time shall be continued to the following business day. The term "days" shall mean calendar days unless otherwise noted.

35.     **Interim Stay of Proceedings.** The Parties agree to hold in abeyance all proceedings in the Action, except such proceedings as are necessary to implement and complete the Settlement. Further, without further order of the Court, the Parties hereto may agree in writing to reasonable extensions of time to carry out any of the provisions of the Settlement.

36.     **Notice**. The Parties agree that notices or correspondence relating to this Agreement or any dispute relating to same shall be served on the Parties at the following addresses:

Plaintiffs and Plaintiffs' Counsel:

N. RYAN LABAR, ESQ.
LABAR & ADAMS, P.A.
2300 East Concord Street
Orlando, Florida 32803
Email: rlabar@labaradams.com
(407) 835-8968

Angeli Murthy, Esq.
Morgan & Morgan PA
8151 Peters Rd, 4th Floor,
Fort Lauderdale, FL 33324
Email: AMurthy@ForThePeople.com
(954) 327-5369

Defendant and Defendant's Counsel:

JOHN H. LASSETTER, ESQ.
LITTLER MENDELSON, P.C.
1300 IDS Center
80 South 8th Street Minneapolis, Minnesota 55402
Email: jlassetter@littler.com

13

Case: 4:25-cv-00097-CMS    Doc. #: 148-1    Filed: 06/05/26    Page: 14 of 15 PageID #: 1514

(612) 630-1000

37.    **Amendment or Modification.** This Agreement may be amended or modified only by a written instrument signed by counsel for all Parties or their successors in interest. This Agreement may not be discharged except by performance in accordance with its terms or by a writing signed by the Parties hereto.

38.    **Entire Settlement Agreement.** This Agreement with exhibits constitutes the entire Agreement among the Parties, and no oral or written representations, warranties, or inducements have been made to any Party concerning this Agreement other than the representations, warranties, and covenants contained and memorialized in such documents.  All prior or contemporaneous negotiations, memoranda, agreements, understandings, and representations, whether written or oral, are expressly superseded hereby and are of no further force and effect.  Each of the Parties acknowledges that they have not relied on any promise, representation, or warranty, express or implied, not contained in this Agreement.  No rights hereunder may be waived except in writing.

39.    **Authorization to Enter into Settlement Agreement.** The Parties warrant and represent that they are authorized to enter into this Agreement and to take all appropriate action required or permitted to be taken by such Parties pursuant to this Agreement to effectuate its terms, and to execute any other documents required to effectuate the terms of this Agreement. The Parties and their counsel shall cooperate with each other and use their best efforts to affect the implementation of the Agreement.  If the Parties are unable to reach resolution on the form or content of any document needed to implement this Agreement, or on any supplemental provisions or actions that may become necessary to effectuate the terms of this Agreement, the Parties shall seek the assistance of an agreed upon Mediator to resolve such disagreement.

40.    **Binding on Successors and Assigns.** This Agreement shall be binding upon, and inure to the benefit of Named Plaintiff, Dent Wizard, the Collective Members, and their heirs, beneficiaries, executors, administrators, successors, transferees, successors, assigns, or any corporation or any entity with which any party may merge, consolidate, or reorganize.  The Parties hereto represent, covenant and warrant that they have not directly or indirectly assigned, transferred, encumbered, or purported to assign, transfer, or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action, or rights herein released and discharged except as set forth herein.

41.    **Counterparts.** This Agreement may be executed in one or more counterparts, including by facsimile or email. All executed counterparts and each of them shall be deemed to be one and the same instrument. All executed copies of this Agreement, and photocopies thereof (including facsimile and/or emailed copies of the signature pages), shall have the same force and effect and shall be as legally binding and enforceable as the original.

42.    **No Signature Required by Collective Members .** Only the Named Plaintiff will be required to execute this Settlement Agreement on behalf of the Collective Members.  All Collective Members executed the Court approved consent to join form and proxy, authorizing them to be bound by the terms of this Agreement.  The Settlement Notice will advise all Collective Members of the effect of cashing the settlement check and the binding nature of the release, and

14

Docusign Envelope ID: 2674E853-25E4-8C2C-82C0-39E876BF961B

such shall have the same force and effect as if this Settlement Agreement were executed by each Opt-In Plaintiff.

43.    **Cooperation in Drafting.** The Parties have cooperated in the drafting and preparation of this Agreement; hence the drafting of this Agreement shall not be construed against any of the Parties. The Parties agree that the terms and conditions of this Agreement were negotiated at arm's length and in good faith by the Parties and reflect a settlement that was reached voluntarily based upon adequate information and sufficient discovery and after consultation with experienced legal counsel.

44.    **Severability.** The provisions of this Agreement are severable, and if any part of it is found to be unenforceable, the other parts shall remain fully valid and enforceable except as to the total sums to be paid to the Plaintiffs and Plaintiffs' Counsel which are negotiated, stipulated material terms which the Parties equally bargained for at arm's length.

45.    **Governing Law.** All terms of this Settlement Agreement and the exhibits hereto shall be governed by and interpreted according to the laws of the State of Florida.

46.    **Actions to Enforce the Terms:** In any legal action to enforce the terms of this Settlement Agreement, the prevailing party shall be entitled to the recovery of all incurred reasonable attorneys' fees and costs, including appellate fees and costs, found by the Court to be necessary to enforce the terms of this Settlement Agreement.

**IN WITNESS WHEREOF**, the Parties and their Counsel have executed this Settlement Agreement as follows:

PLAINTIFF:

Shawn Sullivan
Named Plaintiff in *Sullivan* Action
Date: 06/04/2026

Richard Reyes
Named Plaintiff in *Griffiths* Action
Date: 06/04/2026

Tyrone Griffiths (Jun 4, 2026 14:14:16 EDT)
Tyrone Griffiths
Named Plaintiff in *Griffiths* Action
Date: 06/04/2026

**DEFENDANT/DENT WIZARD:**

Date: 6/5/2026

Name:
**As authorized representative** of
DENT WIZARD INTERNATIONAL, LLC

15